**Sean K. McElenney**
**Nevada Bar No. 9122**
**BRYAN CAVE LEIGHTON PAISNER LLP**
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Telephone:    (602) 364-7000
Fax:              (602) 364-7070
Email:         skmcelenney@bclplaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIC (RENO) LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>LATIGO RENO, LLC, a Delaware limited liability company; ROBERT A. DALY, JR., an individual; MARK S. MARON, an individual; and MARK S. MARON and SUSAN L. MARON, as trustees of the MARON LIVING TRUST under agreement dated October 6, 2001,<br><br>Defendants. | **Case Number**<br>**[_____]**<br><br>**COMPLAINT FOR BREACH OF WRITTEN LOAN AGREEMENT AND GUARANTY AGREEMENTS** |

Plaintiff RIC (Reno) LLC, a Nevada limited liability company ("**Plaintiff**"), by and through its undersigned counsel, brings this complaint for breach of a written loan agreement by Latigo Reno, LLC, a Delaware limited liability company ("**Borrower**"), a written guaranty agreement by Robert A. Daly, Jr. ("**Guarantor 1**"), and a written guaranty agreement by Mark S. Maron ("**Guarantor 2**") and Mark S. Maron and Susan L. Maron, as trustees of The Maron Living Trust under agreement dated October 6, 2001 ("**Guarantor 3**" and, together with Guarantor 1 and Guarantor 2, "**Guarantors**" and, together with Borrower, "**Defendants**"):

## NATURE OF THE CASE

1.    This is an action by Plaintiff to recover monetary damages of no less than $3,086,580.93 caused by Defendants' breach of their respective payment and performance obligations owed to Plaintiff.

618338901                                           1

## THE PARTIES

**Plaintiff is a Citizen of Delaware and Ontario, Canada**

2. Plaintiff is, and at all times relevant to the allegations in this complaint has been, a Nevada limited liability company.

3. Plaintiff's principal place of business is in Ontario, Canada.

4. Plaintiff's sole member is Romspen (Reomaster II) Holdings Inc., a Delaware corporation with its principal place of business in Ontario, Canada.

5. For purposes of diversity jurisdiction, Plaintiff is a citizen of Delaware and Ontario, Canada.

**Defendants are Citizens of California**

6. For purposes of diversity jurisdiction, Borrower is a citizen of California.

7. Borrower is, and at all times relevant to the allegations in this complaint has been, a Delaware limited liability company.

8. Borrower's sole member is, and at all times relevant to the allegations in this complaint has been, Latigo Group, LLC, a Delaware limited liability company ("**Latigo Member**").

9. Latigo Member's sole members are: (i) Via Cresta, Inc., a California corporation ("**Member 1**"); (ii) Flex Development, LLC, a California limited liability company ("**Member 2**"); and (iii) BEFEHERO Investments, LLC, a California limited liability company ("**Member 3**").

10. Member 1's principal place of business is in California. Accordingly, Member 1 is considered a resident of California for diversity jurisdiction purposes because: (i) it is incorporated in California; and (ii) its principal place of business is in California.

11. Upon information and belief, Member 2's sole member is Scott Whittaker, an individual who resides in Los Angeles, California. Mr. Whittaker has owned his residence in California since approximately December 2017 and has held a California driver's license exclusively since October 3, 2023, reflecting his intent to remain domiciled in California. Given the foregoing facts, Mr. Whittaker is considered a citizen of California for purposes of diversity

618338901                                     2

jurisdiction.

12.    Upon information and belief, Member 3's sole members are Guarantor 1 and Dusty Snyder.

13.    Upon information and belief, Dusty Snyder is an individual who is, and at all times relevant to the allegations in this complaint has been, a resident of California. Upon information and belief, Mr. Snyder has owned his residence in California since approximately September 13, 1989; has continuously resided in California since that time; has been a registered voter in the state of California since 1991; holds a driver's license issued by the state of California; and intends to continue residing within the state of California for the foreseeable future. Given the foregoing facts, Mr. Snyder is considered a citizen of California for purposes of diversity jurisdiction.

14.    Guarantor 1 is an individual who is, and at all times relevant to the allegations in this complaint has been, a resident of California. Upon information and belief, Guarantor 1 has owned his residence in California since approximately July 18, 2001; has continuously resided in California since that time; has been a registered voter in the state of California since 2008; has held a California driver's license exclusively since at least 2009; and intends to continue residing within the state of California for the foreseeable future.

15.    Alternatively, and to the extent Guarantor 1's intent to remain in California is not established, upon information and belief, Guarantor 1 can be found in Mexico with an intent to remain in Mexico. Given the foregoing facts, Guarantor 1 is either a citizen of California or Mexico for purposes of diversity jurisdiction.

16.    Guarantor 2 is an individual who is, and at all times relevant to the allegations in this complaint has been, a resident of California. Upon information and belief, Guarantor 2 has owned his residence in California since approximately May 1, 2002; has continuously resided in California since that time; has been a registered voter in the state of California since 2002; holds a driver's license issued by the state of California; and intends to continue residing within the state of California for the foreseeable future. Given the foregoing facts, Guarantor 2 is considered a citizen of California for purposes of diversity jurisdiction.

618338901                                                    3

17. Guarantor 3 is a trust that was established under the laws of the state of California.

18. The trustees and settlors of Guarantor 3 are Guarantor 2 and Susan L. Maron, who are husband and wife. During their respective lifetimes, Guarantor 2 and Mrs. Maron may distribute the income and principal of the trust as either settlor directs.

19. Because Guarantor 3 is a trust established under the laws of the state of California and administered in California, and its trustees are citizens of California, Guarantor 3 is considered a citizen of California for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

20. The Court has subject matter jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332(a)(1) given the instant dispute involves citizens of different states and the amount in controversy exceeds $75,000.00, as is evidenced herein.

21. This Court has personal jurisdiction over the Defendants because the Defendants caused events to occur within the state of Nevada. Moreover, the contracts governing this dispute contain forum selection clauses and venue consent provisions whereby Defendants submitted to the jurisdiction and authorized Plaintiff to file and pursue this action in this Court.

22. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this court as a substantial part of the events or omissions that give rise to the claim herein occurred in the state of Nevada, and the property that is the subject of this action is situated in the state of Nevada.

## GENERAL ALLEGATIONS

### The Loan Agreement, the Deed of Trust, and the Security Agreement

23. On or about May 27, 2022, Plaintiff's predecessor-in-interest, TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership ("**Original Lender**") and Borrower entered into a Real Estate Loan Agreement (as the same has been or may be amended from time to time, the "**Loan Agreement**") evidencing Original Lender's agreement to loan (as the same has been or may be amended from time to time, the "**Loan**") to Borrower the original principal amount of $12,200,000.00 (the "**Loan Amount**").

24. Pursuant to the Loan Documents (defined below), Borrower agreed, among other

618338901                                                    4

things, to: (i) make monthly interest payments on the unpaid balance of the Loan; and (ii) repay the entire outstanding principal balance of the Loan, together with all accrued and unpaid interest and any other amounts due under the Loan Documents, by no later than the Maturity Date (as defined below).

25.    Pursuant to the Loan Agreement, the Loan accrued interest at a fixed rate of 10.00% per annum (the "**Interest Rate**").

26.    Pursuant to the Loan Agreement, upon the occurrence of an event of default as defined in the Loan Agreement, Borrower agreed to pay interest at a rate of 23.00% per annum (the "**Default Rate**").

27.    Page 18, Section 8.2 of the Loan Agreement provides that Borrower shall not create or suffer to exist any lien, security interest, or other charge or encumbrance against any of its properties (the "**Lien Covenant**").

28.    The Loan is evidenced by, among other things, that certain Promissory Note dated as of May 27, 2022, from Borrower in favor of Original Lender in the original principal amount of the Loan Amount (as the same has been or may be amended from time to time, the "**Note**"). True and correct copies of the Loan Agreement, together with the Amendments (defined below), and the Note are attached hereto as **Exhibits A** and **B**, respectively, and each document is incorporated herein as though fully set forth.

29.    Repayment of the Loan and Borrowers' performance of its obligations under the Loan Documents (defined below) are separately secured by, among other things, the Deed of Trust and the Security Agreement (each as defined below). In particular, Borrower granted Original Lender a first priority lien interest in and to certain real and personal property located in Reno, Nevada ("**Borrower Property**") as more specifically described in, and pursuant to, among other things: (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of May 27, 2022 and recorded on May 31, 2022, in the Washoe County, Nevada Recorder's Office, at Document No. 5307174, executed by Borrower for the benefit of Original Lender (the "**Deed of Trust**"); and (ii) that certain Security Agreement dated as of May 27, 2022, by and between Borrower, as grantor, and Original Lender as secured party

618338901                                          5

(the "**Security Agreement**"), which lien interest was perfected upon the filing of that certain UCC Financing Statement on June 1, 2022, in the Delaware Department of State, at file number 2022-4598603, naming Borrower as debtor (the "**Borrower UCC Filing**"). True and correct copies of the Deed of Trust, the Security Agreement, and the Borrower UCC Filing are attached hereto as **Exhibits C**, **D**, and **E**, respectively, and each document is incorporated herein as though fully set forth.

**The Guaranty Agreements**

30.     Subject to certain limitations, repayment of the Loan and performance of Borrowers' obligations under the Loan Documents is guaranteed by two Guaranty Agreements, each executed on May 27, 2022. In particular, there is a Guaranty, dated as of May 27, 2022, given by Guarantor 1 (the "**Daly Guaranty**") for the benefit of Original Lender, and a Guaranty, dated as of May 27, 2022 given by Guarantor 2 and Guarantor 3 (the "**Maron Guaranty**" and, together with the Daly Guaranty, the "**Guaranty Agreements**") for the benefit of Original Lender. A true and correct copy of each Guaranty Agreement is attached hereto as **Exhibits F** and **G**, and each document is incorporated herein as though fully set forth.

31.     Pursuant to each Guaranty Agreement, each Guarantor, ". . . irrevocably and unconditionally guarantees to [Original Lender] the payment and performance of the obligations and liabilities set forth in . . . this Guaranty . . . as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise . . . Guarantor hereby irrevocably and unconditionally covenants and agrees that it is fully and personally liable for the Guaranteed Liabilities as a primary obligor . . . ." ("**Guarantor Obligations**"). Exhibits F and G, Page 1, Section 2.

32.     Pursuant to each Guaranty Agreement, each Guarantor, ". . . guarantees and promises to pay to [Original Lender], on demand, (a) all Carve-Out Liabilities and (b) all Collection Costs." Exhibits F and G, Page 1, Section 3.3. Such "Carve-Out Liabilities" and "Collection Costs" include, but are not limited to, attorneys' fees and costs Original Lender suffers directly or indirectly from: (i) the enforcement of the Loan Documents; and (ii) any actual or threatened suit, action, proceeding, or adversary proceedings (including all appeals) by,

618338901                                6

against, or in any way involving Original Lender and Borrower or Guarantor, or in any way arising from the Guaranty Agreements or Original Lender's dealings with each Guarantor. Exhibits F and G, Pages 2–3, Sections 3.5.2–.3.

33.    Pursuant to each Guaranty Agreement, among other things, the breach or violation of the Lien Covenant constitutes a Full Recourse Event (as defined in each Guaranty). Exhibits F and G, Pages 3–4, Section 3.5.4.

34.    Pursuant to each Guaranty Agreement, following the occurrence of any Full Recourse Event, the Guarantors, jointly and severally, shall be liable for 100% of the Guarantor Obligations. Exhibits F and G, Page 1, Section 3.4.

35.    Pursuant to each Guaranty Agreement, each Guarantor, "shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing the Obligations, whether or not the liability of the Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision." Exhibits F and G, Page 6, Section 11.

36.    Each Guarantor unconditionally and irrevocably waived any and all defenses, counterclaims, and rights that are or may otherwise become available to them. Exhibits F and G, Page 6, Section 11.

37.    The Loan Agreement, the Note, the Deed of Trust, the Security Agreement, the Borrower UCC Filing, and the Guaranty Agreements, as amended, supplemented, restated, modified, refinanced, replaced, extended or renewed from time to time, are referred to collectively herein as the "**Loan Documents**."

38.    Pursuant to the Loan Agreement, the Loan originally matured on November 30, 2022 (the "**Maturity Date**").

**Loan Agreement Amendments and Demand Letters**

39.    On or around November 30, 2022, Borrower and Original Lender entered into that certain First Amendment to Loan Agreement ("**First Amendment**") pursuant to which, among other things, the Maturity Date was extended to the first to occur of (a) January 31, 2023, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement.

618338901                                                  7

40.    On or around February 1, 2023, Borrower and Original Lender entered into that certain Second Amendment to Loan Agreement ("**Second Amendment**") pursuant to which, among other things: (i) the Maturity Date was extended to the first to occur of (a) February 28, 2023, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement; and (ii) the Interest Rate was increased to 12.00% per annum.

41.    On or around March 1, 2023, Borrower and Original Lender entered into that certain Third Amendment to Loan Agreement ("**Third Amendment**") pursuant to which, among other things, the Maturity Date was extended to the first to occur of (a) March 31, 2023, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement.

42.    On or around April 1, 2023, Borrower and Original Lender entered into that certain Fourth Amendment to Loan Agreement ("**Fourth Amendment**") pursuant to which, among other things, the Maturity Date was extended to the first to occur of (a) April 30, 2023, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement.

43.    On or around May 1, 2023, Borrower and Original Lender entered into that certain Fifth Amendment to Loan Agreement ("**Fifth Amendment**") pursuant to which, among other things: (i) the Maturity Date was extended to the first to occur of (a) July 31, 2023, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement; and (ii) the definition of "Loan Amount" set forth in Schedule I of the Loan Agreement was amended to $10,405,976 as a result of Original Lender cancelling unfunded interest reserve and Borrower paying down $250,000.00 of principal due and owing on the Loan.

44.    By letter dated August 29, 2023 (the "**First Demand Letter**"), Original Lender, through its counsel, among other things: (i) notified Defendants that an Event of Default arising from the failure to repay the matured Loan had not been cured; and (ii) demanded that Borrower and Defendant repay the Loan in full by no later than September 18, 2023. A true and correct copy of the First Demand Letter is attached hereto as **Exhibit H** and is incorporated herein as though fully set forth.

45.    On or around September 29, 2023, and effective as of August 1, 2023, Borrower and Original Lender entered into that certain Sixth Amendment to Loan Agreement ("**Sixth**

618338901                                                    8

**Amendment**") pursuant to which, among other things: (i) the Maturity Date was extended to the first to occur of (a) October 31, 2023, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement; and (ii) the Interest Rate was increased to 15.00% per annum.

46.     On or around November 1, 2023, Borrower and Original Lender entered into that certain Seventh Amendment to Loan Agreement ("**Seventh Amendment**") pursuant to which, among other things: (i) the Maturity Date was extended to the first to occur of (a) January 31, 2024, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement; and (ii) the definition of "Loan Amount" set forth in Schedule I of the Loan Agreement was amended to $9,405,976 as a result of Original Lender cancelling unfunded interest reserve and Borrower paying down $1,000,000.00 of principal due and owing on the Loan.

47.     On or around March 28, 2024, Borrower and Original Lender entered into that certain Amended and Restated Eighth Amendment to Loan Agreement ("**Eighth Amendment**") pursuant to which, among other things: (i) the Maturity Date was extended to the first to occur of (a) June 30, 2024, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement; and (ii) Borrower paid down $500,000.00 of principal due and owing on the Loan.

48.     By letter dated July 8, 2024 (the "**Second Demand Letter**"), Original Lender, through its counsel, among other things: (i) notified Defendants that an Event of Default arising from the failure to repay the matured Loan had not been cured; and (ii) demanded that Borrower and Defendant repay the Loan in full by no later than July 19, 2024. A true and correct copy of the Second Demand Letter is attached hereto as **Exhibit I** and is incorporated herein as though fully set forth.

49.     On or around August 27, 2024, and effective as of June 30, 2024, Borrower and Original Lender entered into that certain Ninth Amendment to Loan Agreement ("**Ninth Amendment**" and, together with the First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, and Eighth Amendment, the "**Amendments**") pursuant to which, among other things: (i) the Maturity Date was extended to the first to occur of (a) October 31, 2024, or (b) the date of acceleration of the Loan pursuant to the Loan Agreement; and (ii) and Borrower paid down $200,000.00 of

principal due and owing on the Loan.

50.    By letter dated December 6, 2024 (the "**Third Demand Letter**"), Original Lender, through its counsel, among other things: (i) notified Defendants that an Event of Default arising from the failure to repay the matured Loan had not been cured; and (ii) demanded that Borrower and Defendant repay the Loan in full by no later than December 16, 2024. A true and correct copy of the Third Demand Letter is attached hereto as **Exhibit J** and is incorporated herein as though fully set forth.

51.    Lender learned that numerous liens had been filed against the Borrower Property between May 12, 2023, and September 18, 2024, thereby constituting a breach of the Lien Covenant.

52.    By letter dated January 3, 2025 (the "**Fourth Demand Letter**" and, together with the First Demand Letter, the Second Demand Letter, and the Third Demand Letter, the "**Demand Letters**"), Original Lender, through its counsel, among other things: (i) notified Defendants that an Event of Default arising from the failure to repay the matured Loan had not been cured; and (ii) notified Defendants that the Loan was then fully recourse to each Defendant pursuant to Pages 1 and 3–4, Sections 3.4 and 3.5.4 of each Guaranty Agreement as a result of the Borrower's breach of the Lien Covenant. A true and correct copy of the Fourth Demand Letter is attached hereto as **Exhibit K** and is incorporated herein as though fully set forth.

53.    Despite demand, Defendants failed, refused, and neglected to pay the amount due and owing under the Loan Documents as demanded by Original Lender in the Fourth Demand Letter.

**Forbearance Agreements**

54.    The Loan matured by its terms on the Maturity Date.

55.    Borrower did not repay the Loan when it matured on the October 31, 2024, Maturity Date provided for in the Ninth Amendment as required by Page 2, Section 2.2.2 of the Loan Agreement.

56.    On or about May 6, 2025, Original Lender, Borrower, and each Guarantor entered into that certain Forbearance & Loan Modification Agreement (the "**Original Forbearance**

**Agreement**").

57.    The Original Forbearance Agreement was amended on or about June 10, 2025, by that certain First Amendment to Forbearance & Loan Modification Agreement (the "**First Forbearance Amendment**" and, the Original Forbearance Agreement as amended by the First Forbearance Amendment, the "**Forbearance Agreement**"). True and correct copies of the Original Forbearance Agreement and the First Forbearance Amendment are attached hereto as **Exhibits L** and **M**, respectively, and each document is incorporated herein as though fully set forth.

58.    Pursuant to the Forbearance Agreement, Defendants each acknowledged and agreed to, among other things: (i) the validity and enforceability of the Loan Documents with no counterclaims, defenses, or offsets thereto; (ii) an Event of Default resulting from the failure to repay the Loan when it matured on the Maturity Date; (iii) Original Lender's full performance of all obligations owed under the Loan Documents; (iv) the amounts due and owing under the Loan Documents were accurately summarized on the loan statement attached as Exhibit A to the Original Forbearance Agreement; (v) the existence of recorded liens against the Borrower Property in violation of the Lien Covenant; (vi) as a result of the Specific Defaults (as defined in the Original Forbearance Agreement and specifically including the breach of the Lien Covenant), a Full Recourse Event (as defined in each Guaranty Agreement) had occurred and the Loan and Obligations are now fully recourse to each Guarantor pursuant thereto; and (vii) broad and full releases in favor of Lender. Exhibit L, Pages 2–3, 4, 5, and 6–7, Sections 3, 5, 14, and 19.

59.    In the Forbearance Agreement, Defendants broadly released Original Lender from any and all claims and/or causes of action arising in any way relating to the Loan.

60.    Pursuant to the Original Forbearance Agreement, Original Lender agreed to forbear from enforcing its rights and remedies under the Loan Documents until no later than May 20, 2025, provided that Original Lender would further forbear from enforcing its rights and remedies under the Loan Documents until June 5, 2025, if Borrower paid Original Lender an additional amount of $80,000.00 on or before May 20, 2025. Exhibit L, Page 3, Sections 4(a)–(b).

618338901                                              11

61.    Pursuant to the First Forbearance Amendment, Original Lender agreed to forbear from enforcing its rights and remedies under the Loan Documents until no later than June 30, 2025, provided that Original Lender would further forbear from enforcing its rights and remedies under the Loan Documents until: (i) July 14, 2025, if Borrower paid Original Lender an additional amount of $75,000.00 on or before June 30, 2025; (ii) July 28, 2025, if Borrower paid Original Lender an additional amount of $50,000.00 on or before July 14, 2025; (iii) August 11, 2025, if Borrower paid Original Lender an additional amount of $50,000.00 on or before July 28, 2025; (iv) August 25, 2025, if Borrower paid Original Lender an additional amount of $50,000.00 on or before August 11, 2025; and (v) September 1, 2025, if Borrower paid Original Lender an additional amount of $50,000.00 on or before August 25, 2025. Exhibit M, Pages 2–3, Sections 4(a)–(f).

62.    As such, the Original Lender's forbearance expired no later than September 1, 2025, by which date Defendants failed to repay the fully matured Loan.

**Assignment and Foreclosure**

63.    On or about July 15, 2025, Original Lender assigned all of its right, title, and interest in and to the Loan Documents to Plaintiff, as set forth in, among other things: (i) that certain Assignment of Assignment of Rights Under Covenants, Conditions and Restrictions, Permits and Development Documents, dated as of July 15, 2025 (the "**Omnibus Assignment**"), and recorded in the Washoe County Recorder's Office, at document number 5569996; and (ii) that certain Assignment of Beneficial Interest Under Deed of Trust, dated as of July 15, 2025 (the "**Assignment of Deed of Trust**"), and recorded in the Washoe County Recorder's Office, at document number 5569995. A true and correct copy of the Omnibus Assignment and the Assignment of Deed of Trust are attached hereto as **Exhibits N** and **O**, respectively, and each document is incorporated herein as though fully set forth.

64.    On September 25, 2025, Plaintiff's senior lien interest in and to the real property and certain of the personal property comprising the Borrower Property was foreclosed at a properly conducted, duly noticed, non-judicial trustee's sale (the "**Foreclosure Sale**") for a credit bid of $2,600,000.00 as set forth in that certain Trustee's Deed Upon Sale, dated as of September

29, 2025 (the "**Trustee's Deed**"). The Trustee's Deed is attached hereto as **Exhibit P** and is incorporated herein as though fully set forth.

65.    As established by that certain appraisal conducted by Newmark Valuation & Advisory, dated as of September 25, 2025 (the "**Appraisal**"), the fair market value of the Borrower Property at the time of the Foreclosure Sale was $8,550,000.00.

66.    At the time of the Foreclosure Sale, after proper application of all of Borrower's payments and other credits, not less than $11,232,403.52 was due and owing under the Loan Documents.

67.    After application of the fair market value of the Borrower Property as established by the Appraisal, there remains as of March 13, 2026, not less than $3,086,580.93 due and owing under the Loan Documents, plus accruing interest thereon (the "**Remaining Debt**").

68.    To date, Defendants have not repaid the Remaining Debt.

## FIRST CAUSE OF ACTION

### (Breach of Loan Documents by Borrower)

69.    Plaintiff repeats and incorporates each of the foregoing allegations of this complaint, as if fully set forth herein.

70.    The Loan Documents are valid, binding and enforceable agreements between Plaintiff and Defendants.

71.    Plaintiff has fully performed all its obligations under the Loan Documents that have not been otherwise excused or rendered moot as a result of the foregoing default and breaches.

72.    The Loan matured by its terms, and the entire balance became immediately due and payable as of the Maturity Date.

73.    Despite demand, Borrower has failed and refused to pay the Remaining Debt upon its maturity despite Plaintiff's demands and, as a result, Lender has been damaged.

74.    Pursuant to NRS 40.459, Borrower is liable for a deficiency judgment calculated as the lesser difference between: (i) the amount by which the amount of indebtedness was secured exceeds the fair market value of the property sold at the time of the Foreclosure Sale,

618338901                                          13

with interest from the date of the sale; or (ii) the amount which is the difference between the amount for which the property was actually sold at the foreclosure sale and the amount of indebtedness which was secured, with interest from the date of sale.

75.    Because the Lender's credit bid is less than the Borrower Property's fair market value as established by the Appraisal, the deficiency is properly calculated based on the Borrower Property's fair market value.

76.    After application of the fair market value of the Borrower Property as established by the Appraisal, no less than $3,086,580.93 remains due and owing under the Loan Documents as of March 13, 2026.

77.    Interest continues to accrue at the Default Rate of 23.00%.

78.    Plaintiff continues to incur costs and attorneys' fees enforcing its rights and remedies under the Loan Documents.

79.    Plaintiff is entitled to recover its costs and fees pursuant to NRS 18.010(1) and the Loan Documents, including but not limited to attorneys' fees incurred in enforcing its rights and remedies under the Loan Documents, in an amount presently unknown but to be proven at the time of trial of this matter and, in the event of default, $45,000.

## SECOND CAUSE OF ACTION

### (Breach of Loan Documents by Guarantors)

80.    Plaintiff repeats and incorporates each of the foregoing allegations of this complaint, as if fully set forth herein.

81.    The Loan Documents are valid, binding and enforceable agreements between Plaintiff and Defendants.

82.    Guarantor 1, Guarantor 2, and Guarantor 3 executed the Guaranty Agreements unconditionally guaranteeing Borrower's payment of the amounts due and owing under the Loan Documents.

83.    Plaintiff has fully performed all its obligations under the Loan Documents that have not been otherwise excused or rendered moot as a result of the foregoing default and breaches.

618338901                                          14

84. The Loan matured by its terms, and the entire balance became immediately due and payable as of the Maturity Date.

85. Despite demand, Borrower has failed and refused to pay the Remaining Debt upon its maturity despite Plaintiff's demands and, as a result, Lender has been damaged.

86. As a result of the Borrower's breach of the Lien Covenant, the Loan and Obligations are now fully recourse as to each Guarantor.

87. Guarantors are and continue to be in material breach of their respective obligations under the applicable Guaranty Agreement by, among other breaches, failing and refusing, and continuing to fail and refuse, to repay the full outstanding balance of the Loan despite Plaintiff's demands.

88. Each Guaranty Agreement provides that each Guarantor, "shall be and remain liable for any deficiency remaining after foreclosure of any mortgage or security interest securing the Obligations, whether or not the liability of the Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision."

89. Pursuant to NRS 40.459, Guarantors are liable for a deficiency judgment calculated as the lesser difference between: (i) the amount by which the amount of indebtedness was secured exceeds the fair market value of the property sold at the time of the Foreclosure Sale, with interest from the date of the sale; or (ii) the amount which is the difference between the amount for which the property was actually sold at the foreclosure sale and the amount of indebtedness which was secured, with interest from the date of sale.

90. Because the Lender's credit bid is less than the Borrower Property's fair market value as established by the Appraisal, the deficiency is properly calculated based on the Borrower Property's fair market value.

91. After application of the fair market value of the Borrower Property as established by the Appraisal, no less than $3,086,580.93 remains due and owing under the Loan Documents as of March 13, 2026.

92. Interest continues to accrue at the Default Rate of 23.00%.

93. Plaintiff continues to incur costs and attorneys' fees enforcing its rights and

618338901                                            15

remedies under the Loan Documents.

94.    Plaintiff is entitled to recover its costs and fees pursuant to NRS 18.010(1) and the Loan Documents, including but not limited to attorneys' fees incurred in enforcing its rights and remedies under the Loan Documents, in an amount presently unknown but to be proven at the time of trial of this matter and, in the event of default, $45,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants on all causes of action as follows:

1.    For recovery of all such actual damages proximately caused by Defendants' breaches of the Loan Documents and the Guaranty Agreements in the amount of no less than $3,086,580.93 as of March 13, 2025, with interest accruing at the Default Rate until the date of judgment in this matter, plus any other damages as the law shall permit and in an amount to proven at trial;

2.    For an award of attorneys' fees and costs recoverable pursuant to the Loan Documents and NRS 18.010(1); and

3.    For such other and further relief as the Court deems just and appropriate.

DATED this 19th day of March, 2026.

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: /s/ Sean K. McElenney
Sean K. McElenney
Nevada Bar No. 09122
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000
skmcelenney@bclplaw.com

*Attorneys for Plaintiff*

618338901                    16